UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------x
MICHAEL JAMES PELUCCO,

                        Plaintiff,                        **MEMORANDUM AND ORDER**
                                                                         19-CV-4397 (RRM)
      -against-

COMMISSIONER OF SOCIAL SECURITY,

                        Defendant.
----------------------------------------------------------x
ROSLYNN R. MAUSKOPF, United States District Judge.

      In late March 2021, the Court granted the plaintiff Michael James Pelucco's motion for judgment on the pleadings, denied defendant Commissioner's cross-motion, and entered judgment remanding this Social Security case for further administrative proceedings. After obtaining a fully favorable decision from an ALJ on remand and 14 days after receiving a Notice of Award of past-due benefits, plaintiff filed the instant motion for attorney's fees pursuant to 42 U.S.C. § 406(b). For the reasons set forth below, the Court grants plaintiff's motion and awards Daniel A. Osborn of Osborn Law, P.C. ("Osborn Law"), who represented plaintiff before this Court – $42,939.53 in attorney's fees.

## BACKGROUND

      On or about June 1, 2016, plaintiff filed a claim for disability insurance benefits with the Social Security Administration ("SSA"), alleging that he had been disabled since September 22, 2015. After his claim was denied at the agency level, he requested a hearing before an Administrative Law Judge ("ALJ"). On October 3, 2018, following a video hearing at which plaintiff was represented by counsel, ALJ Dina R. Loewy rendered an unfavorable decision, finding that plaintiff was not disabled. The Appeals Council denied plaintiff's request for review on July 2, 2019.

Less than two weeks later, plaintiff retained new counsel, Mr. Osborn, to represent him before this Court on appeal of the Commissioner's final decision denying him benefits. On July 15, 2019, plaintiff signed an Attorney Fee Agreement which provided, among other things, that plaintiff would pay Mr. Osborn either 25% of the past-due benefits recovered or the attorney's fees awarded pursuant to the Equal Access to Justice Act ("EAJA"), whichever was greater. (Attorney Fee Agreement (Doc. No. 25-3) at 1.) Under the terms of the agreement, plaintiff assigned any fees and/or costs awarded pursuant to the EAJA to Mr. Osborn, and Mr. Osborn agreed to refund any EAJA fees he received to plaintiff if he was awarded a greater amount pursuant 42 U.S.C. §406(b). (*Id.*) The agreement specified that Mr. Osborn would receive fees only if he succeeded in convincing the federal court to remand the matter or to award plaintiff benefits. (*Id.*)

On July 31, 2019 – 16 days after entering into this agreement – Mr. Osborn commenced this action on plaintiff's behalf. Four days later, the Court entered an order directing defendant to serve the administrative record on plaintiff and directing plaintiff to serve defendant with a motion for judgment on the pleadings within 60 days after being served with the administrative record. (10/3/2019 Order (Doc. No. 10).) Defendant served the 568-page administrative record on plaintiff on October 29, 2019. (10/29/2019 Letter (Doc. No. 11).) Thereafter, Mr. Osborn sought and received a two-month extension of the 60-day deadline for filing plaintiff's Rule 12(c) motion. No further extensions of time were requested by either party and in mid-May 2020, Mr. Osborn filed plaintiff's motion, which included a 19-page memorandum of law. Defendant simultaneously filed a cross-motion for judgment on the pleadings.

In a memorandum and order dated March 30, 2021, the Court granted plaintiff's motion for judgment on the pleadings to the extent it sought to remand this matter to the Commissioner

2

and denied defendant's cross-motion. (Memorandum & Order (Doc. No. 21) at 1, 23.) On March 31, 2021, the Court entered judgment remanding this case for further administrative proceedings. (Judgment (Doc. No. 22).)

The day after judgment was entered, Mr. Osborn wrote a letter to defendant's counsel seeking payment of $8,849.00 in attorneys' fees pursuant to the EAJA. (Letter from Mr. Osborn to AUSA Appleton. (4/1/2021 Letter (Doc. No. 25-4).) Mr. Osborn attached to the letter copies of time records indicating that he and another Osborn Law attorney, Lindsay M. Trust, spent a total of 40.9 hours on this case, including 12.1 hours reviewing the ALJ's decision and other portions of the administrative record, 23.8 hours drafting plaintiff's motion papers, and 4.6 hours drafting plaintiff's reply brief. Those records also established that a paralegal spent 2.6 hours on the case and that Osborn Law paid the $400 filing fee.

Defendant's counsel agreed to award plaintiff $8,600 in attorney's fees and $400 in costs in satisfaction of his claims under the EAJA. In late April 2021, the parties submitted a stipulation and proposed order reflecting that agreement, which the Court promptly "so ordered." (4/29/2021 Order (Doc. No. 24).) Although the Court awarded the EAJA fees to plaintiff, the attorney's fees and cost were paid to Osborn Law in accordance with the terms of the Attorney Fee Agreement. (Declaration of Daniel A. Osborn (Doc. No. 25-2) at ¶ 11.)

After this case was remanded by this Court pursuant to sentence four of 42 U.S.C. § 405(g), plaintiff received another hearing before an ALJ. This time, the ALJ found that plaintiff had been disabled since September 22, 2015, and was entitled to disability insurance benefits. On April 12, 2022, the SSA mailed plaintiff a Notice of Award ("NOA") informing him that he was entitled to past-due benefits for the period from March 2016 – five full calendar months after he became disabled – through April 2022. (NOA (Doc. No. 25-6) at 1–2.) The NOA did not

calculate the past-due benefits, but implied that 25% of this amount was $42,939.53. (*Id.* at 3.) The NOA also noted that the SSA would review plaintiff's case in five to seven years. (*Id.* at 4.)

### The Instant Motion

On April 26, 2022 – 14 days after the NOA was mailed to him – plaintiff moved for attorney's fees pursuant to 42 U.S.C. § 406(b). The Memorandum of Law in Support of the Motion (the "Memo") noted that plaintiff had agreed to pay Mr. Osborn "25% of any awarded back-benefits," (Memo at 4), and that the NOA implied that 25% of the past-due benefits totaled $42,939.53, (*id.* at 2–3). The motion requested that the Court award fees in that amount and instruct the Commissioner to pay the money directly to Osborn Law, (*id.* at 7), but acknowledged that the law firm would have to reimburse plaintiff for the $8,600 in EAJA fees if that amount was less than the amount awarded under § 406(b), (*id.* at 4 n.1). Defendant has not opposed this motion.

## STANDARD OF REVIEW

The Social Security Act "allows courts to grant reasonable attorney's fees for successful representation in Social Security actions." *Fields v. Kijakazi*, 24 F.4th 845, 852 (2d Cir. 2022). Specifically, the Act provides, in relevant part:

> Whenever a court renders a judgment favorable to a claimant under this subchapter who was represented before the court by an attorney, the court may determine and allow as part of its judgment a reasonable fee for such representation, not in excess of 25 percent of the total of the past-due benefits to which the claimant is entitled by reason of such judgment ….

42 U.S.C. § 406(b)(1)(A).

"Section 406(b) does not prohibit contingent fee agreements." *Wells v. Sullivan*, 907 F.2d 367, 369 (2d Cir. 1990). Indeed, the Supreme Court has acknowledged that "the marketplace for Social Security representation operates largely on a contingency fee basis,"

4

*Gisbrecht v. Barnhart*, 535 U.S. 789, 804 (2002), and attorneys and clients "characteristically" enter into contingency-fee agreements "specifying that the fee will be 25 percent of any past-due benefits to which the claimant becomes entitled," *id.* at 803. However, while § 406(b) allows contingency agreements, it "gives no guidance as to how a court should treat them in determining a 'reasonable fee.'" *Fields*, 24 F.4th at 852 (quoting *Wells*, 907 F.2d at 369).

The Second Circuit and the Supreme Court have filled that void by "set[ting] out guidelines for courts conducting this reasonableness analysis." *Id.* at 849. Under these guidelines, courts "approach fee determinations by looking first to the contingent-fee agreement, then testing it for reasonableness." *Gisbrecht*, 535 U.S. at 808; *see Wells*, 907 F.2d at 371. The Second Circuit has "rejected reliance on 'the traditional lodestar method'" in determining whether an amount is reasonable. *Fields*, 24 F.4th at 853 (quoting *Wells*, 907 F.2d at 371). "[B]ecause a successful social security claimant evaluates and pays his own attorney, … the best indicator of the "reasonableness" of a contingency fee in a social security case is the contingency percentage actually negotiated between the attorney and client, not an hourly rate determined under lodestar calculations." *Wells*, 907 F.2d at 371. But a court "ought not blindly approve every fee request made pursuant to a contingent agreement." *Id.* at 372.

Both the Second Circuit and Supreme Court have listed several factors that a court should consider in evaluating the reasonableness of a contingent-fee agreement. The Second Circuit has "instructed courts to 'determine whether the contingency percentage is within the 25% cap' and then to consider 'whether there has been fraud or overreaching in making the agreement, and' … 'whether the requested amount is so large as to be a windfall to the attorney.'" *Fields*, 24 F.4th at 853 (quoting *Wells*, 907 F.2d at 372). In *Gisbrecht*, the Supreme Court provided examples of factors a court might consider in conducting this reasonableness analysis:

> First, the [Supreme] Court pointed to the character of the representation and the results the representative achieved, noting that courts may reduce the requested fees where the representation is substandard. Second, the Court indicated that a reduction is appropriate where the attorney is responsible for delay, lest the attorney profit from the accumulation of benefits during a delay that the attorney caused. And third, a reduction may be in order if the benefits are large in comparison to the amount of time counsel spent on the case – the so-called 'windfall' factor ….

*Fields*, 24 F.4th at 853 (internal quotations and citations omitted).

## DISCUSSION

In this case, most of the factors do not require lengthy discussion. First, the contingency fee specified in the Attorney Fee Agreement between plaintiff and Mr. Osborn does not exceed 25% of the past-due benefits. Second, there is no evidence of fraud or overreaching in the making of the agreement. As the Supreme Court has noted, attorneys and clients "characteristically" enter into contingency-fee agreements "specifying that the fee will be 25 percent of any past-due benefits to which the claimant becomes entitled." *Gisbrecht*, 535 U.S. at 803. Although *Gisbrecht* was decided in 2002, there is nothing to suggest that this has changed over the past 20 years.

Third, Osborn Law's representation was not substandard and helped achieve the results that plaintiff wanted. Plaintiff, who filed his Social Security claim in early June 2016, had no success prior to retaining Mr. Osborn in mid-July 2019. Mr. Osborn promptly commenced this action, in which it convinced the Court to remand this matter for further administrative proceedings. Plaintiff's claim was ultimately vindicated when an ALJ ruled that plaintiff had been disabled since September 22, 2015 – just as he had originally claimed. As a result, plaintiff was awarded over $171,700 in past-due benefits and will continue to receive disability insurance benefits until at least 2027.

Fourth, there is no evidence of inordinate delay before this Court. Osborn Law commenced this action 16 days after plaintiff executed the Attorney Fee Agreement. Although the law firm requested and received a two-month extension of the briefing schedule, plaintiff's motion for judgment on the pleading and defendant's cross-motion were fully briefed and filed within ten months after this action was commenced.

The "Windfall" Factor

The so-called "windfall factor" requires a lengthier discussion. "In determining whether there is a windfall that renders a § 406(b) fee in a particular case unreasonable, courts must consider more than the de facto hourly rate." *Fields*, 24 F.4th at 854. The Second Circuit has identified four factors to be considered in making this determination. First, courts should consider "the ability and expertise of the lawyers and whether they were particularly efficient, accomplishing in a relatively short amount of time what less specialized or less well-trained lawyers might take far longer to do." *Id.* Second, "courts should consider the nature and length of the professional relationship with the claimant – including any representation at the agency level." *Id.* at 855. Although § 406(b) fees compensate counsel only for court-related work, "consideration of 'the time spent and work performed by counsel on the case when it was pending at the agency level' can inform a district court's understanding of 'the overall complexity of the case, the lawyering skills necessary to handle it effectively, the risks involved, and the significance of the result achieved in district court.'" *Id.* (quoting *Mudd v. Barnhart*, 418 F.3d 424, 428 (4th Cir. 2005)).

"A third factor to consider is the satisfaction of the disabled claimant." *Id.* "Finally, a fourth important factor to consider is how uncertain it was that the case would result in an award of benefits and the effort it took to achieve that result." *Id.* at 855. Since contingent-fee

7

agreements make "payment for an attorney in a social security case … uncertain, … any reasonable fee award must take account of that risk." *Id.* at 855–56 (quoting *Wells*, 907 F.2d at 371).

After reviewing these factors, the Court is satisfied that the $42,939.53 requested in this case would not constitute a windfall.  First, Osborn Law was particularly efficient.  According to the time records, the firm spent only 43.5 hours on this case, 2.6 of which were logged by a paralegal.  Although Osborn Law did not handle the case at the agency level, it spent only 12.1 hours reviewing the 568-page administrative record, including the ALJ's decision.  The law firm spent only 23.8 hours drafting plaintiff's motion papers, which included the 19-page Memo, and only 4.6 hours drafting a five-page reply brief.  Second, although Osborn Law's work on this case was largely completed within ten months after the action was commenced, the firm succeeded in the litigation.  It should not be penalized for its efficiency.

With respect to the third factor, there is no evidence that plaintiff, who has a direct financial stake in the fee determination, opposes the fee application.  While the Memo does not expressly state that plaintiff was satisfied with Osborn Law's efforts and the motion papers do not include an affidavit from plaintiff to that effect, it is beyond dispute that, thanks in part of Osborn Law's efforts, plaintiff ultimately received the disability insurance benefits he sought.  This is a result that should satisfy most reasonable clients.

Finally, the Court notes that when plaintiff retained Mr. Osborn, success in this case was uncertain.  By mid-June 2019, plaintiff had been litigating his disability claim for over three years at the agency level, without success.  After the Court remanded this matter for further administrative proceedings, it took approximately one more year to convince an ALJ that plaintiff was disabled.  These facts suggest that the case was complex enough to require

8

considerable effort and skill to obtain a fully favorable result. Accordingly, there was a substantial risk that the litigation might prove unsuccessful and that Osborn Law might receive no compensation at all for its work.

Although the $42,939.53 fee sought by plaintiff amounts to almost $1,000 for each of the 43.5 hours that Osborn Law spent on this action, that fee is nonetheless reasonable in the context of this case. As noted above, there was a substantial risk that Osborn Law might be unsuccessful and receive no compensation for its efforts. The hourly fee, which might be considered high if awarded in a non-contingency case, was reasonable compensation in light of that risk. *See Fields*, 24 F.4th at 854 ("even a relatively high hourly rate may be perfectly reasonable, and not a windfall, in the context of any given case.")

Furthermore, it is well established that an attorney who receives fee awards under both the EAJA and § 406(b) for the same work must "refun[d] to the claimant the amount of the smaller fee." *Ward v. Kijakazi*, 20-CV-5412 (PGG)(JLC), 2023 WL 329210, at *2 (S.D.N.Y. Jan. 20, 2023) (quoting *Gisbrecht*, 535 U.S. at 796.) In its Memo, Osborn Law acknowledges that it must refund to plaintiff the $8,600 in EAJA fees that it received previously. This refund effectively reduces the amount plaintiff will pay for Osborn Law's successful representation to $34,339.53 – about 20% of the past-due benefits plaintiff received. This is 20% less than the 25% fee which plaintiff implicitly found to be reasonable when he entered into the Attorney Fee Agreement.

## CONCLUSION

For the reasons set forth above, the Court grants the instant motion for $42,939.53 in attorney's fees pursuant to 42 U.S.C. § 406(b). The SSA shall pay that amount directly to

9

Osborn Law, which shall promptly refund to plaintiff the $8,600 in EAJA fees received by the firm in June 2020.

SO ORDERED.

Dated:  Brooklyn, New York
       March 30, 2023

/s/ <i>Roslynn R. Mauskopf</i><br>
ROSLYNN R. MAUSKOPF<br>
United States District Judge